IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ESLI PEREZ MELENDEZ, *et al.*,

    Plaintiffs,

    v.

HATFIELD'S EQUIPMENT &
DEDICATION SERVICES, INC., *et al.*

    Defendants.

Civil Action No. 1:13-cv-03684

**MEMORANDUM OPINION**

Plaintiffs Esli Perez Melendez ("E. Perez"), Alvaro Perez Melendez ("A. Perez"), Herber Arriaza Monroy ("H. Arriaza"), and David Arriaza Monroy ("D. Arriaza"), have filed suit on behalf of nearly 40 Spanish-speaking current and former employees of defendant Hatfield's Equipment & Dedication Services Inc. ("Hatfield's"). Plaintiffs, who worked on Hatfield's concrete crew, have also sued Maureen Hatfield ("Ms. Hatfield"); Kenneth P. Hatfield ("Mr. Hatfield"); and Hatfield Equipment & Dedication Services Inc. Profit Sharing Plan ("Hatfield Plan" or "the Plan"). They allege that defendants failed to comply with the reporting and disclosure requirements of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1001 *et seq.* and failed to provide plan documents upon request, as mandated by ERISA.

In particular, in their Amended Complaint (ECF 14), plaintiffs allege that defendants were required to make plan disclosures in a manner calculated to be understood by the average participant under ERISA §§ 102(a), (b), and 104(b), and that "[t]he average participant in the Defendant Plan speaks and reads Spanish as his primary language," and therefore was unable to understand plan disclosures made in English. Am. Comp. ¶ 72. Further, plaintiffs allege:

"Defendant Plan did not distribute notices of plan contribution allocations, statements of profits upon which contributions would be calculated, or other documents that would permit the participants to calculate their benefits." *Id.* at ¶¶ 45. Finally, plaintiffs allege that they were not provided the documents they requested, as required by ERISA.

The Amended Complaint contains two counts, each seeking relief under a separate ERISA provision. Count I seeks equitable relief under 29 U.S.C. § 1132(a)(3), specifically asking the Court to (1) "Order Defendants to issue plan documents and benefit statements in Spanish," and (2) "Order Defendants to remit surcharge to Plaintiff class members who never received plan documents (in English or Spanish) in accordance with ERISA when they became participants and did not receive benefits statements written in Spanish." *Id.* ¶ 89. Count II asks the Court to (1) "Award Plaintiffs and class members who wrote Defendants requesting plan documents penalties pursuant to 29 U.S.C. § 1132(c)(1)(B) for untimely submitted plan documents and failure to respond to document requests," and (2) "appropriate equitable relief for Defendants' breaches of their fiduciary duties" under 29 U.S.C. § 1132 (a)(3). *Id.*

Defendants filed a Motion to Dismiss the Amended Complaint ("Motion," ECF 20), along with a memorandum of law ("Memo," ECF 20-1), supported by several exhibits. Plaintiffs filed an opposition to the Motion (ECF 23), and defendants filed a Reply (ECF 24).

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I will grant the Motion in part and deny it in part.

**Factual Summary**

Plaintiffs are current and former employees of Hatfield's and participants in the Hatfield Plan. Mr. Hatfield is the principal owner and registered agent of Hatfield's, a Maryland

corporation with its headquarters in Annapolis Junction, Maryland.  Ms. Hatfield is the Trustee

of the Plan.  Hatfield's is registered as the "Plan Administrator" and the "plan sponsor" under 29

U.S.C. § 1002(16)(A)–(B).

### 1.  General allegations

Plaintiffs allege that "no member of the class . . . timely received a SPD [Summary Plan

Description] which complied with ERISA's statutory requirement or corresponding regulatory

provisions at the time of becoming a participant."  Am. Comp. ¶ 38.  According to plaintiffs,

"none of the required plan documents have been written to be understood by the average plan

participant because they are not in Spanish, a language read and spoken by the average plan

participant of the Defendant Plan."  *Id.* ¶ 37.  Plaintiffs also claim that "[t]he Plan did not issue

statements to participants regarding their accounts until on or about 2009, when the Plan

provided statements for plan year 2008," and that "[p]laintiffs received plan benefit statements

on an erratic basis which appear to reflect service credit and benefit credit, without explanation

of how the credit is determined."  *Id.* ¶ 39–40.

### 2.  Allegations Specific to E. Perez

According to the Complaint (ECF 1), E. Perez worked for Hatfield's from August 20,

2002, until September 26, 2012.  ECF 1 ¶ 6.  He was terminated from Hatfield's in September

2012.  On October 9, 2012, E. Perez wrote a letter to Mr. Hatfield stating, ECF 20-2:

> "I would [] like to inquire about any information I am entitled to have with
> regards to how to access the Profit Sharing Plan dated 12/31/2008 that is still
> active for the account created for me during my course of employment and any
> other benefits I may be entitled to during my tenure at your company."

On November 13, 2012, Pension Design Group, which plaintiffs allege is the "third party

administrator of the Plan," sent a letter to E. Perez advising him to mail his request directly to

Hatfield's. Am. Comp. ¶ 51. On December 5, 2012, E. Perez sent Hatfield's a letter requesting information about his pension benefits. The subject line of the letter was "Re: Request for Copy of Profit Sharing Plan" and, in the body of the letter, E. Perez requested "a copy of [his] Hatfield Equipment and Dedication Services, Inc. Profit Sharing Plan." *Id.* ¶ 52. Ms. Hatfield sent an undated letter in response, stating: "Our plan distributions are calculated at the end of the year. At that time employees who have ended employment with the company during the year will be sent a distribution packet." She did not provide a copy of the Profit Sharing Plan. *Id.* ¶ 53; ECF 20-3.

Richard Renner, counsel for plaintiffs, called Pension Design Group in March 2013 to inquire about E. Perez's Profit Sharing Plan account. Pension Design Group allegedly stated that Mr. E. Perez's account became active in 2007 but gave no further information. Am. Comp. ¶ 54.

On February 14, 2013, E. Perez received a letter from Pension Design Group explaining his options for obtaining his retirement benefits from the Plan. The letter did not provide him with the Plan Document or with any information about his accrued benefits. It only contained the forms required for E. Perez to elect to receive either a distribution or direct rollover to another plan. Am. Comp. ¶ 56.

E. Perez wrote to Pension Design Group through his legal representative on April 22, 2013. *Id.* ¶ 57; ECF 20-4. E. Perez's counsel requested "copies of any and all documents relating to the status or condition of Hatfield Equipment & Dedication Inc. Profit Sharing Plan and all other pertinent information," as well as all "records regarding the participation of" E. Perez in the plan. Am. Comp. ¶ 57; ECF 20-4.

On April 25, 2013, Pension Design Group wrote a letter to E. Perez's counsel advising that it was not the Plan Administrator and that "[a]ny matters concerning the profit sharing plan maintained by Hatfield Equipment & Dedication Inc. should be directed to them."  Pension Design Group copied Ms. Hatfield on the letter.  Am. Comp. ¶ 58; ECF 23-1.

E. Perez's counsel contacted Hatfield's on July 3, 2013, to request "copies of any and all documents relating to the status or condition of Hatfield Equipment & Dedication Inc. Profit Sharing Plan, and all other pertinent information."  *Id.* ¶ 59; ECF 20-5.  The letter stated:

> This letter serves as the third request by or on behalf of Mr. Perez Melendez, as he previously wrote to Mr. Kenneth P. Hatfield on October 9, 2012 requesting any information he was entitled to have regarding how to access the Profit Sharing Plan in addition to the reasons for his termination.  Mr. Hatfield responded and gave the reason for the termination of Mr. Perez Melendez's employment, but did not respond to the request for information about the Profit Sharing Plan.[1]  Additionally, on behalf of Mr. Perez Melendez, this office wrote to the Pension Design Group on April 22, 2013 to request information regarding how to access the Profit Sharing Plan.  Pension Design Group replied on April 25, 2013 unequivocally stating that they are not the Plan Administrator.  That correspondence was copied to Ms. Maureen Hatfield.
>
> The annual report on the back of Mr. Perez Melendez's valuation statements explains that [Hatfield's] is the Plan Administrator for the Profit Sharing Plan.  The Plan Administrator is required by law to provide information about Mr. Perez Melendez's benefits, as well as "a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  ERISA §104(b)(4), 29 U.S.C. § 1024(b)(4), and "all documents, records, and other information relevant to the claimant's claim for benefits."  29 C.F.R. § 2560.503-1(h)(2)(iii).  Please consider this letter a request for all of the foregoing documents.

On August 6, 2013, Ms. Hatfield forwarded to E. Perez's counsel a copy of E. Perez's participant account statement, a Plan Document effective May 22, 2009, and a Summary Plan

---

[1] The Amended Complaint does not allege any facts about the letter from Mr. Hatfield which is described in this July 3, 2013 letter, nor does that letter from Mr. Hatfield appear in the record.

Description effective January 1, 2009.  Am. Comp. ¶ 60.  "None of the documents Mrs. Hatfield sent were in Spanish, or had correspondence written in Spanish explaining what the documents were, or what they stated."  *Id.* ¶ 62.

### 3.   Allegations specific to A. Perez

A. Perez was terminated by Hatfield's in January 2011.  On October 9, 2012, A. Perez wrote a letter to Mr. Hatfield that was identical in substance to the letter sent on the same date by E. Perez, which is described above.  ECF 20-6.

Plaintiffs further allege: "On information, on or about December 2012, A. Perez wrote to Defendant Plan also requesting plan information that would allow him to understand the plan benefits, how his benefits were calculated, and the options under the plan for distribution or rollover.  On information, as of the commencement of this litigation, A. Perez has not received documents responsive to his written request in December 2012."  Am. Comp. ¶¶ 64–65.

The record also contains an undated letter sent to A. Perez by Ms. Hatfield.  It states: "I apologize that you did not receive your distribution packet from the company that manages our retirement plan.  As I do not handle the distribution part of the plan I was not aware of this.  I have requested that they send out another packet immediately."  ECF 20-7.  The letter provides the address and phone number for Pension Design Group.  *Id.*

Plaintiffs also allege that "Plaintiff A. Perez received two W-2 forms indicating that he received distributions from the Plan in two different years, and on information it is unclear whether such distributions occurred."  *Id.* ¶ 67.

4.   Allegations specific to other plaintiffs

Plaintiffs allege that D. Arriaza "received a W-2 form indicating that he received a distribution from the Plan, when he did not."   Am. Comp. ¶ 66.   This is the only factual allegation regarding D. Arriaza.   Neither of the causes of action in the Amended Complaint appears to relate to this W-2 form.   The Amended Complaint contains no factual allegations specific to H. Arriaza.

**Standard of Review**

A motion pursuant to Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by the plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."   Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).   It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 n.3 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In reviewing such a motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"   *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, ____ U.S. ____, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385–86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010).   However, a complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of

action," is insufficient.  *Twombly*, 550 U.S. at 555.  Similarly, the defendant's motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citation omitted).  Moreover, the court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe*, 579 F.3d at 385–86.

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy he or she seeks.  *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S. Ct. 1960 (2012).  "'Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'"  *Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted); *accord Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201-02 (10th Cir. 2011) ("When reviewing a 12(b)(6) dismissal, 'we must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed.'  Dismissal is appropriate if the law simply affords no relief.") (internal citation omitted).

A motion asserting failure of the complaint to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted), unless such a defense can be resolved on the basis of the facts alleged in the complaint.  *See Goodman*

*v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "This principle only applies, however, if all facts necessary to the affirmative defense '*clearly appear*[ ] *on the face of the complaint*,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

A court ordinarily does not "consider matters outside the pleadings . . . when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, in considering a challenge to the adequacy of the Complaint, the court "may properly consider documents attached to a complaint or motion to dismiss 'so long as they are integral to the complaint and authentic.'" *Anand v. Ocwen Loan Servicing, LLC,* ⸺ F.3d ⸺, 2014 WL 2535405, at *2 (4th Cir. June 6, 2014) (quoting *Philips v. Pitt County Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); *see also Philips*, 572 F.3d at 180 (observing that a court may properly consider documents "attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic" (citations omitted)); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). To be "integral," a document must be one "that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). Here, Defendants have attached several exhibits to their Motion which give rise to the plaintiffs' factual allegations and which the plaintiffs have referenced in the Amended Complaint; I will consider those exhibits in resolving this motion.

## Discussion

### Count I: Seeking Equitable Relief Under 29 U.S.C. § 1132(a)(3)

In Count I, plaintiffs seek relief under 29 U.S.C. § 1132 (a)(3) for two alleged violations of ERISA.  First, plaintiffs claim that defendants failed to provide them with plan documents "in a manner calculated to be understood by the average [plan] participant."  Am. Comp. ¶ 71.  Second, plaintiffs allege that defendants failed to produce plan documents in a timely manner upon the plaintiffs' entry to the Plan.  Am. Comp. ¶ 73.  I will address each allegation in turn.

29 U.S.C. § 1132(a)(3) permits a beneficiary of an ERISA plan to bring a civil action against a plan administrator "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1022(a) provides: "A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in section 1024(b) of this title.  The summary plan description . . . *shall be written in a manner calculated to be understood by the average plan participant.*"  *Id.* (emphasis added).  Plaintiffs claim that the "average participant in the Defendant Plan speaks and reads Spanish as his primary language, and requires translation assistance with reading or speaking English."  Am. Comp.  ¶ 72.  And, plaintiffs allege that defendants "never translated [plan] documents into Spanish during the period of Plaintiff's employment."  Am. Comp. ¶ 73.

29 U.S.C. § 1022(a) contains no express requirement that the Summary Plan Description be provided in multiple languages.  *Diaz v. United Agr. Employee Welfare Ben. Plan & Trust*, 50 F.3d 1478, 1484 (9th Cir. 1995).  However, 29 C.F.R. § 2520.102-2 provides, in relevant part:

In the case of either (1) A plan that covers fewer than 100 participants at the beginning of a plan year, and in which 25 percent or more of all plan participants are literate only in the same non-English language, or (2) A plan which covers 100 or more participants at the beginning of the plan year, and in which the lesser of (i) 500 or more participants, or (ii) 10% or more of all plan participants are literate only in the same non-English language, so that a summary plan description in English would fail to inform these participants adequately of their rights and obligations under the plan, the plan administrator for such plan shall provide these participants with an English-language summary plan description which prominently displays a notice, in the non-English language common to these participants, offering them assistance.

This regulation does not require that all Plan documents be provided in a foreign language. Rather, the documents must include a notice of assistance in the foreign language.

More important, however, the cited regulation applies only if a certain number or percentage of participants are "literate only in the same non-English language." Plaintiffs have not alleged facts sufficient to demonstrate the applicability of the regulation. Although they allege that they are "40 Spanish-speaking employees" whose "first language" is Spanish, the Amended Complaint contains no allegation regarding the number of total plan participants, the percentage of total plan participants who are only literate in Spanish, or even that they are *only* literate in Spanish. Accordingly, the facts alleged in the Complaint, taken as true, do not state a claim for relief.

Plaintiffs' second allegation in Count I is that they were not provided Summary Plan Descriptions within 90 days of becoming participants, as mandated by 29 U.S.C § 1024(b)(1)(a). Defendants argue that, even if this allegation is true, it does not give rise to a private cause of action under ERISA, absent an allegation of actual harm.

As defendants point out, plaintiffs did not allege that they suffered any harm as a result of defendants' alleged failure to timely provide plan documents. Plaintiffs' failure to allege actual

harm is fatal to their Amended Complaint.  In *Colin v. Marconi Commerce Sys. Employees' Ret. Plan*, 335 F. Supp. 2d 590, 605–06 (M.D.N.C. 2004), the court discussed the applicable law in the Fourth Circuit:

> Plaintiffs have not, however, expressly asserted any harm they have suffered as a result of Defendants' alleged failure to provide these documents. Beneficiaries cannot recover on claims under ERISA's notice provisions absent a showing that they were harmed as a result of the notice failure. *Ellis v. Metropolitan Life Ins. Co.,* 126 F.3d 228, 238 (4th Cir. 1997) (affirming grant of summary judgment on the plaintiff's claim regarding defects in her notice of benefit denial, and stating that "there must be a causal connection between these defects and the final denial of a claim"); *Pierce v. Security Trust Life Ins. Co.,* 979 F.2d 23, 30 (4th Cir. 1992) (stating that 'case law establishes that a plan participant 'must show reliance and prejudice in order to recover for an employer's failure to comply with ERISA's statutory requirements,'" and noting that even a total failure to notify will not give rise to an ERISA claim where no harm is shown) (quoting *Govoni v. Bricklayers, Masons & Plasterers Int'l Union of Am., Local No. 5 Pension Fund,* 732 F.2d 250, 252 (1st Cir. 1984)).

In their Opposition, plaintiffs cite *CIGNA Corp. v. Amara*, __ U.S. __, 131 S. Ct. 1866 (2011), for the proposition that the "loss of a right protected under ERISA" satisfies the requirement of actual harm.  However, plaintiffs misread *Amara*.  The question in the relevant portion of *Amara* was whether a plaintiff must show "detrimental reliance" on plan documents in order to satisfy the "actual harm" requirement.  The Court noted that the "relevant substantive provisions of ERISA do not set forth any particular standard for determining harm." *Id.* at 1881. Accordingly, the Court looked to the law of equity to determine the proper standard.  Although the Court acknowledged that the equitable remedy of estoppel required a showing of detrimental reliance, "this showing is not always necessary for other equitable remedies." *Id.*  Accordingly, the Court held that "a plan participant or beneficiary must show that the violation injured him or her.  But to do so, he or she need only show harm and causation.  Although it is not always

necessary to meet the more rigorous standard implicit in the words 'detrimental reliance,' actual harm must be shown." *Id.* at 1881–82.

*Amara* did not pronounce that the "loss of a right protected by ERISA" *ipso facto* satisfies the harm requirement.  Plaintiffs rely on a passage that reads: "[A]ctual harm may sometimes consist of detrimental reliance, but it might also come from the loss of a right protected by ERISA or its trust-law antecedents."  *Id.* at 1881.  However, read in the context of the opinion, the phrase "[harm] might also come from the loss of a right protected by ERISA" simply means that harm may result even without detrimental reliance on plan documents.  In other words, harm might *result from* the loss of a right protected by ERISA, but the loss of a right protected by ERISA does not itself constitute harm.  Even after *Amara*, harm is required for recovery under 29 U.S.C. § 1132(a)(3).

Because plaintiffs have failed to allege any actual harm arising from defendants' failure to provide Summary Plan Descriptions to them, they are not entitled to relief under 29 U.S.C. § 1132 (a)(3).

For the foregoing reasons, Count I will be dismissed.  Because plaintiffs may be able to remedy the shortcomings of the Amended Complaint, they may file a Second Amended Complaint within 17 days of the docketing of the accompanying Order.

## Count II: Seeking Penalties Under 29 U.S.C. § 1132(c)(1)(B)

In Count II, plaintiffs seek relief under 29 U.S.C. § 1132(c)(1)(B) for defendants' failure to produce plan documents to plaintiff E. Perez upon request, as required by 29 U.S.C § 1024(b)(4).  Defendants argue that plaintiffs are not entitled to relief because their claims are directed at an incorrect party, time barred, or not proper under judicial discretion.

Pursuant to 29 U.S.C. § 1132(c)(1), a plan administrator "who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."

Plaintiffs base their claim in Count II on letters allegedly sent to Mr. Hatfield by E. Perez and A. Perez on October 9, 2012, to which Mr. Hatfield allegedly did not respond.  Additionally, E. Perez alleges that he requested documents from the Pension Design Group on April 22, 2013, and that Ms. Hatfield was put on notice of this request when Pension Design Group responded to E. Perez's attorney and copied Ms. Hatfield.  Finally, E. Perez alleges that he requested plan documents directly from Hatfield's, the Plan Administrator, on July 3, 2013, and did not receive them until August 6, 2013.

Defendants contend that Ms. Hatfield, Mr. Hatfield, and the Plan are not proper parties to this action because 29 U.S.C. § 1132(c)(1)(B) only allows statutory damages claims to be brought against the plan administrator.  I agree.  "Under the plain language of ERISA, civil penalties can only be imposed upon the plan administrator.  *See* 29 U.S.C. § 1132(c)(1)." *Flores v. Life Ins. Co. of N. Am.,* 770 F. Supp. 2d 768, 773 (D. Md. 2011); *see Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54, 62 (4th Cir. 1992) ("We, therefore, conclude that Nationwide was not the plan administrator and consequently could not have breached the administrator's statutory duties.").  It is undisputed that Hatfield's is the Plan Administrator.  Therefore, it is the only

party that could be held liable for failure to respond to requests for plan documents. Accordingly, Count II will be dismissed with respect to Ms. Hatfield, Mr. Hatfield, and the Plan.

Defendants next argue that plaintiffs' claims arising from the letters of October 9, 2012, are time barred.  "Because § 1132 does not contain a statute of limitations, courts must 'borrow the state law limitations period applicable to claims most closely corresponding to the federal cause of action.'" *Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 337 (4th Cir. 2009) (quoting *White v. Sun Life Assurance Co. of Can.*, 488 F.3d 240, 245 (4th Cir. 2007)). In assessing the timeliness of a claim for failure to produce documents under 29 U.S.C. § 1132 (c)(1)(B), the court in *Corrado v. Life Investors Owners Participation Trust & Plan*, 2011 WL 886635, *11 (D. Md. Mar. 11, 2011) said: "Here the analogous state law limitation period is Maryland's one year statute of limitations for suits for fines, penalties, and forfeitures.  Md. Code Ann., Cts & Judic. Proc § 5–107."  *See also Wallace v. Freight Drivers & Helpers Local No. 557 Pension Fund*, 2012 WL 2571223 (D. Md. July 2, 2012).

The original Complaint was filed by E. Perez on December 5, 2013, and the Amended Complaint, with the additional plaintiffs, was filed on April 14, 2014.  No matter which date is used, the letters of October 9, 2012, fall outside of the 12-month statute of limitations under applicable Maryland Law.  Therefore, claims arising out of requests made in those letters are time barred.[2]

As to the allegation that the plan administrator was put on notice as to E. Perez's April 22, 2013 request for documents when Pension Design Group responded to that request and

---

[2] It is not clear whether the language used in the letters of October 9, 2012, amounts to a request for documents, and, thus, whether statutory penalties would lie.  I need not address this issue, however, as the claims would be time barred.

copied Ms. Hatfield, plaintiffs do not provide any support for this position, and I find it problematic for several reasons.  Nowhere in § 1132(c)(1)(B) is there any language suggesting that a plan administrator simply learning about a request for documents from another party would be sufficient to trigger statutory penalties.  In fact, the statute specifically applies to a plan administrator who "fails or refuses to comply with a request . . ." 29 U.S.C. § 1132(c)(1)(B).  It is unclear how a plan administrator would comply with a request for documents made to another party.  Further, the letter on which Ms. Hatfield was copied does not contain any reference to a request for documents.  The entire body of the letter reads as follows:

> "We are in receipt of your April 22, 2013 letter regarding the Hatfield Equipment & Dedication Inc. Profit Sharing Plan.  Please be advised that we are not the Plan Administrator for the above referenced plan.  Any matters concerning the profit sharing plan maintained by Hatfield Equipment & Dedication Inc. should be directed to them."  ECF 23-1.[3]

Therefore, I will dismiss any claim for penalties under 29 U.S.C. § 1132(c)(1)(B) arising out of this letter.

E. Perez's final claim arises from a letter sent to Hatfield's on July 3, 2013, requesting "a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated, and all documents, records, and other information relevant to the claimant's claim for benefits."  ECF 20-5.  According to plaintiff, he did not receive the documents until August 6, 2013.  Under 29 U.S.C. § 1132(c)(1)(B), defendants were required to respond "by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request."

---

[3] This letter was provided by the plaintiffs in their Opposition.

This 30 day period expired on August 2, 2013. But, E. Perez did not receive the documents until four days later. Therefore, E. Perez has alleged a claim on which relief may be granted. Specifically, the facts alleged in the Complaint, if true, entitle E. Perez to statutory damages of $100 per day, for up to four days, depending on when the documents were sent. It is only in this respect that the Amended Complaint states a claim for relief.

## Conclusion

For the foregoing reasons, the Motion to Dismiss is granted, in part, and denied, in part. Plaintiffs may file a Second Amended Complaint, addressing the deficiencies as to Count I, within 17 days of the docketing of the accompanying Order.

An Order consistent with this Memorandum follows.

Date: August 12, 2014                           _____/s/_____
                                                Ellen Lipton Hollander
                                                United States District Judge